# CIRCUIT COURT.

## LANSINGBURGH, (New York) JUNE, 1804.

The People
vs.          } LIBEL.
John Tracy.

Hon. *Smith Thompson*, Justice.

*Foote*, Counsel for the People.

*Van Vechten*, Counsel for the Defendant.

In an indictment for a libel, the truth may be given in evidence; but merely as an item to show the *intent*. · Private libels, on the natural defects of individuals, are the more malicious for being true.

The publication from which the libellous matter is extracted, may be read after the truth of the inuendoes upon the record are proved.

See Buckingham's case *ante*.

At a circuit court held in this county, before his honour Judge Thompson, came on the trial of Mr. Tracy, on an indictment for a libel on Morgan Lewis, Esq., chief justice of this state. The indictment was found at a court of general sessions in October last, and was removed by *certiorari* into the supreme court. The words set forth as libellous on the record were extracted from a publication in the Lansingburgh Gazette, of the 23d August last, stating a decision of the chief justice on the trial of Harry Croswell, accompanied with some remarks, and were as follows: "The Judge (Lewis) on the trial refused Mr. Croswell the privilege of producing his witnesses;" the following words, but which did not appear upon the record, concluded the sentence,—"declared that he would not suffer them, were they present, to open their lips to prove the truth of what Croswell had written; and expressly charged the jury that it was entirely immaterial whether the libel was true or not ; that it was not for them to consider whether the words amounted to such a libel as ought to be punished; that whether the motives of the defendant were good or bad was wholly out of the question ; that if the jury was satisfied that Croswell was the publisher, and that the inuendoes were properly proved, they must pronounce a verdict of guilty.' The other parts of the publication consisted of observations naturally arising from a reflection on the consequences which would necessarily result from so alarming, so dangerous a doctrine. The whole was a republication from the Ulster Gazette.

The publication being admitted by the defendant, his honour the judge remarked to the counsel, that as the law relative to libels had not yet been settled by the supreme court, he was at liberty to be governed by his own opinion. He then observed, that although a different decision had been made on a late trial, he should permit the truth of the words set forth on the record to be given in evidence, not as a justification, but as an item to show the *intent* of the defendant; and should submit generally to the consideration of the jury both the law and the fact.

*Van Vechten*, the defendent's counsel, offered himself as a witness. He stated that he was present at the trial of Mr. Croswell, and that the C. J. refused an application to postpone said trial, for the purpose of giving Mr. Croswell time to procure a witness to prove the truth of the publication for which he was indicted; and declared that he would not permit his witnesses to be sworn were they in court. He also produced a copy of the case made for the Supreme Court after the trial of Mr. Croswell; from which it appeared, that the chief justice charged the jury that it was no part of their province to inquire or decide on the intent of the defendant; or whether the publication was true, or false, or malicious; that the only question for their consideration and decision was, whether the defendant was the publisher of the piece charged in the indictment; and second as to the truth of the inuendoes; that if they were satisfied as to these two points, it was their duty to find him guilty.

The truth of the words upon the records being thus proven, *Foote*, the district attorney, moved for leave to read the jury the whole of the publication from which they were extracted. This was objected to by the counsel for the defendant. The objection, however, was overruled.

Mr. *Van Vechten* observed that it was for the jury to determine whether the proceedings in our courts of justice might with safety be published; whether the conduct of our public officers was to be shielded from the public eye; whether the liberty of the press was to be preserved in this country; whether a printer should be punished for publishing the truth. He contended, that as from the nature of our government all its officers were amenable to the people, were in fact their servants, it was necessary, it was indispensable that

LANSING-
BURGH,
June, 1804.

The People
v.
Tracy.

their proceedings should be published, that they might be known. He dwelt at some length on the importance of the trial by jury, and urged the necessity of their resisting every attempt to encroach upon their privileges. He also contended, that as the publication in question related to the official conduct of a public officer, its truth, which had been fully proven, ought to be considered as a complete justification.

*Mr. Foote* attempted to persuade the jury that the words on the record were false; for that the refusal of the C. J. to allow Mr. Croswell the privilege of producing his witnesses was not on the trial, but on the discussion of a preliminary question before the jury was sworn.

His Hon. Judge Thompson then addressed the jury; and in a very impartial and perspicuous charge explained his ideas of the law on the subject of libels. He stated, that in his opinion the jury were confined in their inquiry to two points: 1st, whether the defendant was the publisher, and whether the inuendoes were proved; 2d, the intent, whether innocent or malicious. He repeated his opinion, as before given, that the truth of the publication ought to be considered merely as an item to show the intent; for there might be cases, he said, in which the truth of a libel would be no justification. Such, for instance, were those private libels which published the natural defects of an individual, and which ought to be considered the more malicious for being true. He. however, submitted both the law and the fact to the consideration of the jury. He averted to the distinction attempted to be drawn by the district attorney, as before mentioned, and stated it to be immaterial, as he considered the preliminary proceedings alluded to as forming a part of the trial; and observed, that he had no doubt but that the words set forth upon the record were substantially true. In the course of the charge he declared to the jury, that although his opinion differed from that of the C. J., still he believed the latter to have been governed in his decision, on the trial of Mr. Croswell, by the best motives, and from the fullest conviction of its correctness.

The jury retired to their room, and in a few minutes returned with a verdict of NOT GUILTY.